All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. We have three argued cases this morning and we're going to change the order of the three arguments because the AZ case and the AY case are so closely related we'd like to hear them consecutively. So we'll do AZ, AY and then the fears. And our first case is number 2012-7046 AZ versus Shinseki. Mr. Stoltz. Thank you. Good morning, your honors and may it please the court. Veterans Court erred in this case when it found that the case involves a weighing of evidence. It does not. Both the Veterans Court and Board of Veterans Appeals committed legal error when they violated this court's holding in Buchanan and rendered the provisions 38 CFR section 3.304 F5 meaningless. The Veterans Court further committed legal error by endorsing the circular reasoning that confident evidence of an in-service stressor is required to substantiate the veteran's claim and that while a lack of corroborating evidence cannot be a problem. I have trouble reading them and saying that service records are required. I do read them as saying that service records are evidence that the absence of a service record is evidence that it didn't occur but I don't read them as saying that a service record is required to prevail on the claim. So perhaps you could address the question of whether allowing service records in these circumstances to outweigh other evidence really is consistent with the regulations and with the rules. There's a federal rule of evidence which bears on this 803. Are you familiar with that? I'm not. I don't have it at immediate recollection. Well, it has to do with the use of records to prove a negative, the absence of an indication in the record to prove a negative and that is only permissible if the event would normally be recorded in the record. Here we have a situation where I think the government admits that typically these sexual assaults within the military are not recorded in the record. So it seems like a bit of an odd thing under those circumstances to be using the absence of a recordation as evidence that the event did not occur. I agree with you, Your Honor. I think that they are using the absence of evidence. Really the only evidence in this case that speaks to the events in service are the veteran statements herself and the statements from her siblings that were included that the court I think that trying to prove this with an absence of evidence, especially if I'm following Your Honor's question, under F-5 there's a regulation specifically on point to address specifically this type of situation. Yeah, but it doesn't, on the face of the regulation, it doesn't say that you can't use the absence of a service record as evidence that the sexual assault did not occur. The regulation doesn't go quite that far, but the history of the regulation and other things do constitute recognition by the government that these assaults are rarely recorded, which might seem to invoke this federal rule of evidence, which suggests that if something wouldn't normally be recorded, the absence of a recordation can't be used as negative evidence that the event did not occur. Well, the federal rules of evidence don't apply to veterans' cases. Well. But just to, and I know that Your Honor knows. I understand that, but they have been followed as informative, if not binding. And there is in fact one veteran's case which specifically addresses this question, not in this context, but in another context, and he finds that the absence of a record is not significant because it's not something that would normally be recorded. That's the Voschensky case, which is 24 Veterans' Appeals 2.1. Well, to the extent that the federal rules of evidence were not pled in this court, I know that we would be happy to provide any supplemental memorandum of law should the court ask us or direct us to do so. But it remains my contention that the absence of evidence in this case, especially under the guidelines articulated in Buchanan and the which Your Honor alluded to, VA has specifically recognized that the absence. The absence of any evidence in your client's military records to indicate the occurrence of the event is not the only evidence that was in the case that was referred to by the BVA. Your client, multiple disciplinary problems both before and after the assault, a statement that they intended, their client intended to marry the father of the child. The board relied on the fact that the PTSD wasn't diagnosed until 30 years after the service. Well, Your Honor, the board did address all those things. And first of all, I don't And the board discounted the sibling statements. So there's more, it seemed to me, there's more in the mix than just the absence of the records. And what I understood the presiding judge to be asking was whether or not at least an argument can be made that the absence of anything in the record showing the event is legally insufficient. It just can't be put in the mix. Okay. The, so the Supreme Court has held a long, long time ago that sufficiency of the evidence is both sufficiency in fact as well as sufficiency in law. And if you have a kind of evidence, a category of evidence that you say, well, simply is it isn't probative. If it's so that it is highly unlikely, if not really unlikely, that a person who's abused would go and have it recorded in the record, then the fact that it wasn't recorded doesn't advance the resolution of the question. I think that what does advance the resolution of the question here. Well, let me ask you this. If we were to, if one were to decide that this category of evidence, i.e. the absence of notation in the record of the occurrence of the event is legally insufficient, what's the statutory hook that we use to announce that statement? I would think that the statutory hook could be found in Section 1154, which does, because that is the statute that says that the VA must consider lay evidence in evaluating the court to do it. I think that the regulations speak to it. I think this court's case law speaks to it. I think that... In the cases in which we held that you couldn't discount lay testimony entirely in the absence of a record, those were instances where it was easy, I think, and correct for us to say that the duty to consider lay evidence was being overridden by a construction that allowed you to throw it out absent a confirmatory record. But this is a little different situation because the records are, they are being considered. The decision makers below are not telling us that they are throwing this case out entirely on the basis of the absence of a notation in the record. I think that the board nor the court said that they were throwing it out because of that. Although they came really... I know you take that position. They came really close, especially the Court of Appeals for Veterans Claims at page 10 of the record. They came very close to doing that. And the records that Your Honor knows... Is the connection to the statute more because we can't be sure? As we read this record, you are maintaining that the decision is driven entirely by the absence of a notation in the record. I took a view that the BVA and the CBC recited the correct rule of law and that the absence of the record was in the mix. And if we can't be sure that you're right or I'm right, then... I would say 5107B, Your Honor. I would say that the benefit of the doubt doctrine would be another statutory hook. Well, that's a little difficult. It does seem... I mean, there's no question here that the Veterans Court also relied on the absence of a record. But as Judge Clevenger points out, that wasn't the only thing they relied on. Presumably, it's not up to us to decide. If we were to say that you can't consider the absence of records, it's not up to us to decide what the result would be in the case if they were limited to considering the other evidence in question because we're not supposed to make factual determination. Absolutely. But my recollection, and maybe you don't know about this, is that there are cases in the veterans area where we have said that certain evidentiary standards have to govern the proceeding and that that's inherent in the nature of the process. And each case has a little bit different. For example, post-traumatic stress disorder requires the stressor event. So yes, each case presents a bit of a different evidentiary question. But this case presents an evidentiary question with a regulation that directly speaks to it. And like I say, I think that the absence of evidence is what they relied on. All of the other evidence that was cited in there really is only evidence of what they say it is, that she was pregnant in service, that she intended to marry. I don't think it does say that she intended to marry the father, by the way. They also point to the fact that to the extent that her witnesses suggest that her behavior changed at the time after the assault, they show a series of disciplinary reports that preceded the date of the assault and then continued after to demonstrate that there were military supervisors, that she was underperforming consistently from well before the assault, through the assault, and after the assault. So at least there's evidence in the record that she was having problems at work before the whole thing ever came to pass. Sure. There was evidence in the record that she was having problems in service, but I don't think that it goes to show one way or the other whether she experienced these assaults. It goes to the credibility of the claim in the witness statement that her behavior changed after the assault, because they're saying she became unable to perform normal functions, severely depressed, whatever, and what the record shows is that she had a consistent problem of bad behavior from before the time of the assault and after the time of the assault. So what they're pointing to is the military records, which do exist to this extent, establish that she was struggling before the assault ever occurred, and so doesn't that give a basis for the board to say it finds the witness statement, especially given that it's by a sibling, which all evidentiary case law holds, you're allowed to take into account as expressing potential bias, being of low appropriate value because it's a relative. Doesn't that contradict those testimonies such that the board could say the testimony is no longer credible in light of this other evidence, which is evidence. It's a military service record. But, Your Honor, they didn't say that. The finder of fact found them competent. The finder of fact found them competent to testify as to their observations. So I don't think that that was a question that the board really – if the board had said these are not credible, I think that we would be – and they may have implicitly found them not to be credible, but I may be missing it, but I did not see it. Didn't the board discount the statements of the two brothers and the sister? They certainly discounted them. Had they not discounted them, I don't think that they would have found against – I mean, there's a mixture of two things going on here. One is whether or not the assault took place, and the second is whether or not there's corroboration. So if you assume for purposes of argument that the assault took place, that your client's testimony to that carries the day, then there has to be corroboration. And it looked to me as if the board was saying they are throwing out the only corroboration evidence is from the siblings, correct? Yes, Your Honor. And if that evidence was insufficient in fact, which is what I thought the board said. But if it's insufficient, then I would say that Buchanan is instructive here because the reason that they're saying that it was insufficient, again, in my reading of what the board and what the court did, they're saying that they were insufficient because it was 30 years after, that it was relying upon what she – We can't – that's beyond our jurisdiction to review that. Certainly, they can rely on those things, and maybe they could have tossed out the testimony for those reasons. The problem is that they also relied on the absence of a service record. So what we don't know is how the BVA would have decided this case had the absence of the military record about the assault been pulled out of the case. If the only adjudications were the disciplinary problems that Judge Moore referred to, the statement of your client that she intended to marry the child, which seemed to be of significance. Well, she intended to marry. I think that the board read it as – I don't want to – That would mean it was used as a data point, and it was used as a data point against your client. Now, it's not for us to weigh the significance of that in the mix because we've held in Chandra that that's a fact question. So I don't think you can really deny that there aren't data points in the record that were held against your client other than the absence of a record of the assault. But I would say that they were held improperly against my client because they're not data points of anything. The court – I'm sorry. The board and the Veterans Court seem to be looking to figure something out for corroboration, whereas the only evidence, again, specifically allowed by the plain language of the regulation, the only evidence of the corroboration that is competent here that speaks to that are the lay testimony of the siblings. Everything else is evidence that she got into a car wreck, she was AWOL, that she became – that the father signed a birth certificate that she planned to marry. I mean, none of those is – What about the fact that they expressly say several of the treatment records from Triangle Family Services link the veteran's diagnosis of PTSD to non-service-related problems such as housing issues, financial stress, a car accident, and unemployability? That's evidence in her medical records that suggests that the PTSD was not caused by the in-service stressors that you allege, even if they in fact happened, but was caused by these other factors. So why isn't that additional evidence upon which they were free to rely to say no service connection? It may be, but that really does get to a factual question. But I guess you're alleging that there's nothing to the contrary. That's what you were just saying, nothing. Well, she does have a diagnosis related to the alleged assault. She does have that. The 2004 medical examination did diagnose her. I didn't read that as being in question just because she has other psychiatric conditions or just because she had some other stressful events in her life. It doesn't mean that she couldn't be awarded service connection. Well, that's your job in front of the CAVC to say it was wrong for the BVA to rely on these other stressors. I mean, I can see how you're arguing that the fact that she had some stressor events after she'd been diagnosed with PTSD as a result of the in-service event should be irrelevant. But you don't make that argument to us. You use that argument at the CAVC. Right, but the fact remains that it is irrelevant. There's nothing we can do about it unless it's legally insufficient. I think that the CAVC made its decision based on the lack. The way that I'm reading that decision was briefed to the court that they really based the denial of service connection here on the lack of corroboration. In part, in part, and the question is whether they can do that. We're well over your time. We'll give you two minutes for rebuttal. Thank you, Your Honor. Mr. Maker, is that the way you pronounce it? Yes, that's correct, Your Honor. So do you agree that the Veterans Administration has concluded that service sexual assaults are rarely reported? They have. In fact, the board itself even acknowledged that there is a problem in reporting sexual assaults in its decision itself. They note that sexual assaults are often going to be rarely reported and may not be found in the official records. So if that's true, and let's suppose hypothetically that we were in a situation where Federal Rule of Evidence 803 applied. If 803 applied, you couldn't rely on the absence of records to show that the assault did not occur, right? Well, you could. I mean, it depends on what you're relying upon the absence of records for, assuming we're in that situation. I don't understand what you're saying. Assume the only evidence in a case. Well, she's... You have a situation where somebody comes and says, I was assaulted, and maybe you have a corroboration, as you do here from the siblings, and the government comes forward and says, well, but it was never noted in the record. The event wasn't noted. And can service connection be denied under those circumstances? Yes. And, well, if it's... So we have corroboration in my hypothetical, and we have credible testimony from the victim of the assault, and there's no reason to doubt the credibility of the corroborators, and the only thing on the other side of the fence is the negative evidence. It can't be denied. Well, it may not be denied. It might be. It depends on the nature of what's reported, the nature of what's in the records. I mean, it's going to be a very fact-intensive... There's nothing in the record. There's nothing. I mean, in this... I'm trying to isolate this so that you can appreciate, I think, the force of what the residing judge was trying to talk to you about. And I understand, but I'm trying to put it in the context of this case. I think we're trying to put it out of the context of this case for the moment. This is a hypothetical question, that you had a situation in which the VA relied solely on the absence of a record to conclude that the sexual assault did not occur, and assume that, and then assume that federal rules of evidence 803 governs, which we understand does not strictly. How could you then conclude that it was proper to rely on the absence of a record when, by the VA's own agreement, these things are rarely reported? In that particular situation, I think it may be fair to say that they couldn't rely upon it. I think that's fair. But again, Your Honor, in a case like this, she had reported sexual and physical assault. She repeatedly went to the VA hospital during her pregnancy. There's no evidence ever found in the record of physical assault. There's no evidence for 30 years. But it's also true that among the other things that we've been talking about, the Board and the Veterans Court did rely on the absence of a record of the assault. And they can weigh the absence of an official record under Section 3.304 F5. How can they do that if the federal rules provide an analogy here? How can they rely on the absence of a record when, by your own admission, it's not typical that these things are recorded in the records? A couple of reasons. The federal rules don't provide an analogy. Also, in promulgating Section 3.304 F5, the VA considered, and it was raised, the fact that these particular circumstances are rarely considered. The VA, in promulgating that regulation, could very well have said, you cannot rely upon the lack of any contemporaneous evidence in weighing your decision. At the end of the day, the VA decided to leave these matters to the Board and allow the Board to weigh it in those particular circumstances. So the particular regulation here allows the Board, and this court's case law, allows the Board to weigh the lack of contemporaneous records in making its determination. It's just one of many factors at this point. The absence of a record can be considered where the record in question is a record of a sexual assault. Where does it say that? It doesn't say that, does it? No, it doesn't say that. The 3.304 doesn't say that, but the VA is required under Section 1154A to consider all pertinent medical and lay evidence. So, I mean, the VA is required to consider... The word pertinent, the question is, is this pertinent when people don't report it? And in this particular case, it most certainly would be. Why? It's not simply not reporting a sexual assault. Just take the data point of the fact that there's no... If you start, the hypothetical that we've worked with is that the agency recognizes that people who are subjected to these types of assaults don't report them. They don't report them. So, the fact that it wasn't reported, how can that fact be probative of anything? The fact that it wasn't reported. Well, something that's rarely reported could occasionally be reported. It's going to at least have some probative value. You may say it has very little probative value. Now, in the instance where it is reported, well then, we're not talking about that because in that instance, the person who was assaulted says, I was assaulted and guess what? There's proof of it corroborated by the record. And so, they're going to win. So, we're talking about the class of situations in which it was not reported. That's what we're talking about. We're not talking about the universe of assault cases. So, it's just in that class of cases where there was no report. And you say, well, wouldn't they expect a report? They don't report this. So, if you were asking whether or not this particular class of a military record, that is to say a notation of a physical or a sexual assault, you say, how can that be legally sufficient if it isn't probative of the ultimate answer? And the answer is… The Supreme Court held way back in the 18-something or others that the question of the legal sufficiency of a particular piece of evidence is a matter for the… It's a legal question. And so, this is not a matter of us deciding as a matter of fact that this class of evidence is not probative. Your Honor, it's weighing… In this particular case, I mean, the board is weighing a statement which has very little probative value against something else which you could say has very little probative value. Let's say that in the mix of the evidence was something that was known to be a lie. Known to be a lie. Let's say, for example, that a government agent fabricated a record that we know is a lie. Now, it would be legally impermissible to have that evidence in the mix, would it not? Yes, because if we know it's… Because it can't advance the ultimate question on a fact of whether something did or didn't happen. It's not probative because it's unreliable, right? And so, the question that we're asking is whether or not there's any reliability to the absence of a medical record in a circumstance where there's been a sexual assault. And the answer is yes, there may be. Why would it be… What's the basis for believing it would be reliable if these things are rarely reported? Well, Your Honor, we're… What the board is weighing in this particular instance is it's weighing… Here's a statement submitted 30 years after the fact against the absence of contemporaneous records. Those are limited probative values. There are, as the panel's questions earlier have suggested, there may be other evidence which weighs against the veteran's claim of a sexual assault. There is other evidence which could be weighed, the 30-year delay, et cetera, et cetera. But the question is, can the absence of a record be considered as part of that mix? That's the question. And if, as Judge Clevenger suggested, the board, the Veterans Court relied on something which it couldn't rely on, don't we have to send it back for them to consider whether they would reach a different result once the improper consideration was removed from the mix? Yes to that question. If they erred, yes. But nothing, again, in the actual regulation precludes the consideration of the absence of an actual record. It's a fact which the VA can properly and the board can properly take consideration of. It may not be entitled to great weight, but it has some probative value. Well, the position that you're taking in essence forces a person who's in the circumstances of AZ and here in our case to make a report into the military records. No. Oh, sure. I mean, somebody is put in this position. If they want ever to be able to demonstrate that this particular stressor was harmful to them, you're saying, well, they have to go and put it in the military records. No, Your Honor, that's incorrect. Just having probative value is different from ultimately the fact that there may be something that counterweights the absence of a record. There's an absence of a record. But I thought you were taking the position in my hypothetical where the only evidence adverse to the veteran would be the absence of the notation. They could still, the VA could prevail. It depends what sort of cooperation there is in the stressor. If there's no evidence of any sexual assault and no credible evidence of a sexual assault. If a veteran comes in and says, I was sexually assaulted, and you can test the veteran's credibility. If the veteran is a liar or if the veteran's been inconsistent about talking about whether or not this ever happened, you can discount the evidence. But if the veteran is unimpeachable as a matter of credibility, you're required to credit the testimony, aren't you? Someone comes in and says, I was raped in service. There's no record of it, but I was raped in service. Buchanan requires you to credit that testimony unless you find the witnesses not believable. You do have to consider the testimony. That's true under Buchanan. I mean, you can't simply say that, you know, we may not, we don't need to consider, you know, their testimony. I mean, it's clear that the court. If the testimony is credible by the veteran as to the assault, and if it's corroborated by someone who's credible, right, they're going to win. Yes, corroborated by someone who's credible. You say they're going to lose if there was no evidence in the record that it was reported. No, and I apologize if I've mistakenly stated that if they have their lay statements, it's corroborated. In those cases, they may be able to overcome the lack of a record. I mean, it's a matter of weighing of the evidence. But you are in a position that the lack of the record lends evidentiary support to rejecting the claim. And so why should, when these things are reported so rarely, why should the lack of a record have evidentiary value when the federal rules would say it doesn't? Well, wouldn't your argument be because in veterans' cases, they expressly held the federal rules don't apply and hearsay is in, all kinds of hearsay, all kinds of stuff that benefits the veteran, and in some cases, stuff that doesn't benefit the veteran, and that that was a decision made not within the purview of this court to overturn? Wouldn't that be your argument? Well, I mean, and yes, I would agree with that. I mean, it's, again, the federal rules are not what's dictating what the board may end up looking at. So it's appropriate to have a less veteran-friendly rule than the veteran would have if he were in federal court? Well, in this particular case, it's not necessarily less veteran-friendly. The absence of a record in other cases may lend some support to their claim depending upon how they structure and how they explain their claim. We actually don't know. But, I mean, in this case, it definitely weighed against the veteran. I mean, make no mistake. It was a factor in which the court weighed the hearsay statements of her siblings, again, filed 30 years later, versus, you know, the lack of any contemporaneous reports, nothing in her medical reports indicating that she had been assaulted, whether we talk about causation or not, whether we talk about, you know, there's nothing in the records that seems to indicate that there was a problem here. The only official records seem to indicate that she was in an otherwise consensual relationship with the individual who was the father of their child. So all of that ends up… Wait. What indicates she was in a consensual relationship? Well, I mean… What? What in this record indicates she was in a consensual relationship and she got pregnant not through a violent act? The only evidence that in the record, and this is more contemporaneous type evidence, is that she had wanted to marry the person who assaulted her. No. Where does it say she wanted to marry the person who assaulted her? She said she intended to get married. Where does it say she wanted to marry the person who assaulted her? That's fair, Your Honor. That's fair. And let me tell you, in the 1970s, you go to an army male gynecologist. You're pregnant and single. And he says to you, young lady, do you intend to be a single mother or do you intend to get married? I intend to get married, sir. I mean, that doesn't have a lot of probative value. Well, the board could have really stepped over… I would agree. The board could have really stepped over the line here. I mean, the board, though, didn't say simply the fact that she intended to get married meant that she was not sexually assaulted. I mean, that, make no mistake, would be absolutely a clear error. But you said there's nothing in this record that supports anything other than she was involved in a consensual relationship and that's how she got pregnant. Do you think maybe that you overstated quite significantly in that regard? No, I mean, there's… You continue to stand by the fact that this record supports the fact that she was in a consensual relationship and wasn't sexually assaulted. There's nothing contemporaneous is what my statement should have been that indicates that she was not in a consensual relationship. Because people don't report these things. Well, not just because people don't report these things, Your Honor. Just because, I mean, again… We have statements of two brothers and sisters who said shortly after this happened, she told us about this and we noticed a change in her behavior. And this is… What we're talking about now is whether or not the other evidence would be sufficient if it were properly tested, in fact, which is not our job to do. But when they threw out the statements of the siblings on the ground that they're 30 years old, it made it sound like they thought that the woman had only related this to her siblings after 30 years. But in fact, in those statements, they were… The siblings were saying she told us… I'm writing it down now, 30 years later, but she told us back then. And this is not the kind of thing you really forget about, you know, if your sister was… This happened to her. The board does state that, but, I mean, nothing was done about it over 30 years. I mean, this is… Well, I mean, she wasn't diagnosed… When was she diagnosed with PTSD? It was 30 years after. Yeah, sure, there's a 30-year gap. And so what was her cause of action before she was diagnosed with PTSD? How was she going to get any money out of the VA? Just go in and say, I got raped, give me some money? Not… The VA doesn't pay you, right? They don't cash you out when you establish you got raped. You've got to prove that you got hurt as a result of it. Not out of the VA, but it could… But there are other sources of records. There are other… This 30-year, I mean, doesn't… I know it's not for us to decide the facts, but throwing this out entirely on the basis of 30 years old seemed to me a little shallow. Well, in combination with the other evidence, I think it is, because we don't have an explanation for the 30-year gap. This is… I mean, she had alleged that the assaulter had taken her son. And raised the… Or her child, rather. Raised the child for 16 years, and yet there's… Let me ask you the question this way. Maybe you can't speak for the agency on this point, but looking forward, what would be… What's the harm to the adjudication of these cases if the absence of the notation in the record of the assault was taken off of the table as evidence? What harm goes… What we're trying to do is to have a fair adjudication of these very difficult cases. And the Secretary's regulations recognize that it's difficult forms of proof. And there's all sorts of kinds of proof that the veteran can bring in to show what happened, right? And the Secretary is certainly entitled to rely on military records that don't deal with whether or not the assault took place to deal with her behavior and discipline and that sort of thing. But what's going to be the harm to the adjudicator system, the search for the truth, if we take the absence of the medical record of the assault out of the mix? Well, because you're taking a piece of evidence that the VA has decided not to take out of the mix. Out of the mix. And I'm reluctant… The VA hasn't ruled on this. I mean, we know that the Secretary in prosecuting these cases likes to use this fact. But F-5 simply notes that sources other than the veteran's service records, that doesn't necessarily mean all the service records. I mean, for example, service record that was false. But again, in promulgating the regulation, the notion of that you cannot rely on the absence of service records was raised with the Secretary. And the Secretary chose not to exclude that as a piece of evidence. So, I mean, Congress itself is struggling with this question. There's legislation pending that would change some of this, some of F-5. How so? It would change it consistent to what I believe is, I hope I'm getting this right, F-3, whichever one is the terrorist. You don't have to have the proof of a stressor? That's the corroboration. You don't have to have corroboration. Proof of stressor, yes. And it basically would make this rule consistent with the rules for post-traumatic stress disorder in the instances of terrorist activity or hostile military activity. Well, that means there's no stressor, no requirement of corroboration of the stressor? It requires a different sort of corroboration where the corroboration would be if you receive, and it wouldn't likely help in this case, but it would effectively create, well, since there's legislation pending, I'm reluctant to give what ultimately it would be, but it would change the rule so that if you have a diagnosis of post-traumatic stress disorder that would link that in, that would serve as the evidence that you needed in order to corroborate. So you wouldn't need a corroboration? Yeah. So it would get rid of the requirement for corroboration, yes. Congress is going to take a whole lot more away from the Secretary than we would if we simply made this class of evidence inadmissible? If Congress chooses to do so. Okay. Thank you, Mr. Mager. Mr. Stelz, you have ten minutes. Your Honors, I do believe that the absence of evidence should be given no weight in veterans' cases, and particularly in a veterans' case where there's a regulation directly on point. Well, I know that's an awfully broad statement because there are many situations where the absence of a record could be quite profitable. For example, the absence of a record of an accident that occurred within the military. Those things typically do get reported, and the absence of a record is significant. And I apologize, Your Honor, I should be more specific. In the lack of evidence, perhaps in Nexus-type of situations, that would be something that probably the Department of Veterans Affairs should be able to weigh, something like that, which I believe was specifically addressed in, I don't know if it had to do with Nexus, but in Buchanan, absence could be given some sort of weight because there are so many particular things. Are you talking about anything broader than the absence of the evidence of the fact of the assault? I mean, how can you argue for a rule that's any broader than that? I don't think that you can go any broader than that, especially in this case, because the regulation does speak directly to it, because the absence of a corroborated stressor is specifically contemplated by the entire structure of this type of situation under F-5. And all that has to happen is that it needs to get to a point where it's as likely as not, or that equipoise that helps veterans out. So I do think that in this particular case where the regulation directly speaks to it, the lack of a corroboration should be given no probative value and no weight. Thank you, Your Honor. Thank you. The case is submitted. I thank both counsel.